UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE,
UNDER THE POOLING AND
SERVICING AGREEMENT DATED
AS OF DECEMBER 1, 2006,
FREMONT HOME LOAN TRUST
2006-E, a national banking association,

        **Plaintiff,**

vs.

FLORIDA FORECLOSURE ATTORNEYS, PLLC,
a limited liability company,

        **Defendant.**

CASE NO:

_____/

## COMPLAINT

Plaintiff, HSBC Bank USA, National Association, As Trustee, Under the Pooling and Servicing Agreement Dated As Of December 1, 2006, Fremont Home Loan Trust 2006-E, a foreign corporation (**HSBC**), sues Florida Foreclosure Attorneys, PLLC (**Florida Foreclosure Attorneys**) and alleges:

### PARTIES

1.    At all times material to this action, HSBC is and was a citizen of Delaware because it is a national banking association with its main office located in Delaware.

2.    At all times material, Florida Foreclosure Attorneys, was a Florida professional limited liability company engaged in the practice of law with an office in Pinellas County, Florida.

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because of complete diversity of citizenship between HSBC and Florida Foreclosure Attorneys and because this is an action for damages in excess of $75,000.00, exclusive of attorneys' fees, interest and costs.

4.      Venue is proper in the Middle District of Florida, Tampa Division, because the defendant professional limited liability company, Florida Foreclosure Attorneys, resides, does business, and has an office for the transaction of customary business in Pinellas County, Florida; moreover, the subject torts were largely committed in Pinellas County.

5.      All conditions precedent to the bringing of this action have been met, satisfied, or waived.

## GENERAL ALLEGATIONS

6.      As evidence of a loan between Lisa and David Green (the **Greens**) and Fremont Investment & Loan (**Fremont**), the Greens executed and delivered to Fremont a Promissory Note (the **Note**) dated October 31, 2006, in the principal amount of $284,000.00. A true and correct copy of the Note is attached as **EXHIBIT A**.

7.      To secure payment of the Note, the Greens executed and delivered to Fremont a Mortgage dated October 31, 2006 on the subject real property. A true and correct copy of the Mortgage is attached as **EXHIBIT B**.

8.      Subsequently, HSBC became the holder of the Note and Mortgage, which are collectively referred to hereinafter as the "**Loan**."

{O1547652;6}                                    2

9.     Litton Loan Servicing LP ("**Litton**") was the loan servicer for HSBC on this loan, at all times material.

10.     The Greens' Loan, which Litton serviced, went into foreclosure in the case of *Fremont Investment & Loan, et al. v. Lisa Green, et. al.*, Case No. 2008CA-002864, in the Circuit Court of the 10th Judicial Circuit, in and for Polk County, Florida.

11.     Litton retained the law firm of Florida Foreclosure Attorneys to represent HSBC in connection with the foreclosure of the subject real property.

12.     A $331,732.87 final judgment was entered in HSBC's favor on May 18, 2009. A true and correct copy of the Final Judgment is attached as **EXHIBIT C**.

13.     The foreclosure sale was eventually set by court order for September 17, 2009.

14.     On September 2, 2009, Litton sent Florida Foreclosure Attorneys a Specified Bid, which specified the maximum bid amount at $270,000.00. A true and correct copy of the Specified Bid is attached as **EXHIBIT D**.

15.     Florida Foreclosure Attorneys hired ProVest LLC (**ProVest**) to bid on HSBC's behalf at the foreclosure sale. A true and correct copy of the engagement letter from Florida Foreclosure Attorneys to ProVest is attached as **EXHIBIT E**.

16.     James Liburdi (**Liburdi**) was in turn hired by ProVest.  Liburdi received Litton's Specific Bid instructions on September 15, 2009, which specified a maximum bid amount of $270,000. A true and correct copy of James Liburdi's Affidavit averring to these facts is attached as **EXHIBIT F**.

17.     Liburdi erroneously and admittedly transposed the maximum bid amount from $270,000 to $27,000 on a personal spreadsheet that he used at the foreclosure sale. (Ex. F, ¶ 5.)

18.     At the foreclosure sale held on September 17, 2009, Liburdi failed to bid over $27,000 for the subject real property due to his transcription error. (*See* Ex. F, ¶ 6.)

19.     Dominique DeJesus at ProVest caught Liburdi's mistake; however, the sale had been completed. (Ex. F, ¶ 7.)

20.     A third party bidder from Ideal Houses, LLC (**Ideal Houses**) was the highest bidder at the foreclosure auction and a certificate of sale was issued to Ideal Houses on September 17, 2009.  True and correct copies of the Certificates of Sale are attached as COMPOSITE EXHIBIT G.

21.     Florida Foreclosure Attorneys waited until September 28, 2009 to serve its Objection to Sale and Motion to Set Aside Foreclosure (**Objection to Sale**) , and then did so only by U.S. Mail, causing the objection to sale to be filed by the Polk County Clerk of Court on September 30, 2009. A true and correct copy of the Objection to Sale and Motion to Set Aside Foreclosure is attached as EXHIBIT H.

22.     The same day that the Objection to Sale was filed, the Polk County Clerk of Court issued a Certificate of Title to Ideal Houses. A true and correct copy of the Certificate of Title is attached as EXHIBIT I.

23.     Liburdi's affidavit, which supported the Objection to Sale, was served on October 1, 2009, and filed with the Polk County Clerk of Court on October 5, 2009. *See* Ex. F.

24.     The Court denied HSBC's Objection to Sale on December 15, 2009 as untimely filed.  A true and correct copy of the state court's order (**Adverse Order**) is attached as EXHIBIT **J**.

25.     After the Adverse Order was entered by the Court, Florida Foreclosure Attorneys did not timely move for rehearing within 10 days from rendition of the order in order to toll the appeals period, Fla.R.Civ.P. 1.530(b), and did not appeal the order within 30 days of its rendition.  Fla.R.App.P. 9.110(b).

26.     Moreover, Florida Foreclosure Attorneys did not advise HSBC or Litton that the court had denied the Objection to Sale until on or about February 17, 2010.

## COUNT I – NEGLIGENCE

27.     Plaintiff reasserts and realleges the allegations set forth in paragraphs 1 through 26 as if fully stated herein.

28.     Florida Foreclosure Attorneys had a duty to HSBC to follow the directions outlined in the Specified Bid, including bidding up to the maximum price of $270,000, and to ensure that the bidding at the foreclosure sale was handled competently and properly.

29.     Florida Foreclosure Attorneys breached this duty by hiring an agent, ProVest, whose agent's negligence admittedly caused HSBC to lose the foreclosure sale to a third party bidder, Ideal Houses.

30.     As a direct and proximate cause of the negligent acts of the agent of Florida Foreclosure Attorneys, HSBC has incurred actual damages, and will continue to incur damages.

WHEREFORE, HSBC respectfully requests this Court to enter Final Judgment in favor of Plaintiff, HSBC, and against Florida Foreclosure Attorneys for damages, interest, costs, and such other and further relief as this Court may deem just and proper.

## COUNT II – LEGAL MALPRACTICE

31.     HSBC reasserts and realleges the allegations set forth in paragraphs 1 through 26 as if fully stated herein.

32.     Litton retained the law firm of Florida Foreclosure Attorneys to counsel and represent HSBC during the foreclosure and judicial sale of the subject real property, and Florida Foreclosure Attorneys accepted the representation.

33.     By virtue of their attorney-client relationship, Florida Foreclosure Attorneys owed HSBC a duty to exercise reasonable care and skill in providing legal services with respect to the foreclosure and judicial sale of the subject real property. Florida Foreclosure Attorneys owed HSBC the duty to perform these tasks with the skill, prudence, and diligence customarily possessed and exercised by other members of the legal profession.

34.     Florida Foreclosure Attorneys neglected their duty to adequately represent the interests of HSBC by failing to retain competent bidding agents, by failing to immediately and timely file an objection to the foreclosure sale, by failing to timely move for rehearing and/or appeal the Adverse Order; and, by failing to timely advise HSBC or Litton of the Adverse Order so that HSBC could take action to protect its interests.

35.     As a result of the neglect of Florida Foreclosure Attorneys in timely objecting to the foreclosure sale, the Court denied the Objection to Sale and Ideal Houses took title to the subject real property.

36.     Because Florida Foreclosure Attorneys failed to timely move for rehearing of the Adverse Order or appeal the Adverse Order, the court's order denying the Objection to Sale remains in force, and it is now impossible to have it reversed.

37.     Furthermore, Florida Foreclosure Attorneys failed to advise HSBC or Litton that they had lost the Objection to Sale until on or about February 17, 2010, nearly a month after the appeal period had expired.

38.     As a direct and proximate cause of the negligent acts of Florida Foreclosure Attorneys in failing to timely object to the foreclosure sale, timely move for rehearing, or timely appeal the Adverse Order, HSBC has incurred actual damages, and will continue to incur damages.

WHEREFORE, HSBC respectfully requests this Court to enter Final Judgment in favor of Plaintiff, HSBC, and against Florida Foreclosure Attorneys for damages, interest, costs, and such other and further relief as this Court may deem just and proper.

## COUNT III – BREACH OF FIDUCIARY DUTY

39.     HSBC reasserts and realleges the allegations set forth in paragraphs 1 through 26 as if fully stated herein.

40.     By virtue of their attorney-client relationship, HSBC reposed great trust and confidence in Florida Foreclosure Attorneys. In turn, Florida Foreclosure Attorneys owed HSBC a duty to exercise the utmost loyalty, good faith, honesty, and fairness with respect to the matters handled for HSBC.

41.     Florida Foreclosure Attorneys breached their fiduciary duty to HSBC by failing to retain competent bidding agents; by failing to immediately and timely file an objection to the foreclosure sale; by failing to timely move for rehearing and/or appeal

the Adverse Order; and, by failing to advise HSBC or Litton of the Adverse Order so that HSBC could take action to protect its interests.

42.     As a direct and proximate result of Florida Foreclosure Attorneys' breach of fiduciary duty, HSBC has incurred actual damages, and will continue to incur damages.

43.     HSBC is entitled to punitive damages, to the extent allowed by Florida law, due to the grossly negligent and/or intentional misconduct of the agents and employees of Florida Foreclosure Attorneys, and because Florida Foreclosure Attorneys actively and knowingly participated in such conduct, and/or its officers, directors, or managers knowingly condoned, ratified, or consented to such conduct, and/or it engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by HSBC.

WHEREFORE, HSBC respectfully requests this Court to enter Final Judgment in favor of Plaintiff, HSBC, and against Florida Foreclosure Attorneys for damages, punitive damages, interest, costs, and such other and further relief as this Court may deem just and proper.

Dated: August 3l , 2010

Respectfully submitted,

William P. Gray, Esq.
Florida Bar Number:  0983993
Email:  bill.gray@akerman.com
Michael D. Starks, Esq.
Florida Bar Number: 0086584
Email: michael.starks@akerman.com
**AKERMAN SENTERFITT**
Post Office Box 231
420 South Orange Avenue, Suite 1200

Orlando, FL  32802-0231
Phone:  (407) 423-4000
Fax:  (407) 843-6610

and

Latasha Marshall-Scott, Esq.
Fla. Bar No.: 0052316
Email:  latasha.marshall-scott@akerman.com
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Phone: 813-209-5043
Fax: 813-223-2837

and

William P. Heller, Esq.
Fla. Bar No.: 0987263
Email: william.heller@akerman.com
**AKERMAN SENTERFITT**
Las Olas Centre II
350 East Las Olas Blvd., Ste. 1600
Ft. Lauderdale, FL 33301
Phone: (954) 463-2700
Fax: (954) 463-2224

*Attorneys for Plaintiff HSBC*



 **Privacy Act** 5860

Green

2008 CA 2864

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 31, 2006                BREA, CA 92821
[Date]                          [City]                        [State]

5060 LAKE PIERCE DRIVE    LAKE WHALES, FL 33898-8884

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $        284,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FREMONT INVESTMENT & LOAN

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.200         %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS   ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on December 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 1, 2036                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 2727 E IMPERIAL HIGHWAY, BREA CA 92821

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $        1,806.28        . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT

VMP-815N (0404)         Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4                      Initials:____                Original Note & Riders

Exhibit A



## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)  Change Dates**
The interest rate I will pay may change on the first day of **November 1, 2008**          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding     **Four and Seven Hundred Seventy-Seven Thousandths**   percentage points (   4.7770     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than   10.200          % or less than   7.2000    %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than   1.5000        from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than    13.2000          % or less than   7.2000    %.

**(E)  Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY
**\*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF\***
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits; then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6 . 0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Form 5520 3/04
Initials

Exhibit A

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
LISA GREEN                         -Borrower      DAVID GREEN                        -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                         -Borrower

*[Sign Original Only]*

-815N (0404)                      Page 4 of 4                      Form 3520 3/04

Exhibit A

## PREPAYMENT RIDER TO NOTE

This Prepayment Rider is made this 31st          day of     October, 2006          , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note ("Note") made by the undersigned (the "Borrower") to

**FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the property located at:

                    **5060 LAKE PIERCE DRIVE    LAKE WHALES, FL 33898-8884**

(Property Address)

### BORROWER'S RIGHT TO PREPAY
This Prepayment Rider Supersedes Section 5 of the Note

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this note is prepaid in any 12-month period within 2          years after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make full prepayment at any time.

_____  10/31/06          _____ 10/31/06
**LISA GREEN**              Date           **DAVID GREEN**              Date

_____               _____
                          Date                                      Date

MSPPYI XTG  10/28/04

Exhibit A

# Balloon Payment Rider to Note
## (Adjustable Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THIS LOAN, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN ARE PAID ON THIS LOAN. FURTHER, IF YOU REFINANCE, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS BALLOON PAYMENT RIDER TO NOTE (the "Note Rider") is made this **31st** day of **October, 2006** and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") made by the undersigned (the "Borrower") in favor of **FREMONT INVESTMENT & LOAN** (the "Lender") and dated the same date as this Note Rider.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1. **Payments**
Sections 3 and 4 of the Note are modified, amended and supplemented to read, in their entirety, as follows:

    "3.   PAYMENTS
    (A)   Time and Place of Payments
    I will pay principal and interest by making a payment every month.
    I will make my monthly payment on the first day of each month beginning on **December 1, 2006**. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On **November 1, 2036** (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.
    I will make my monthly payments at **2727 E IMPERIAL HIGHWAY, BREA CA 92821** or at a different place if required by the Note Holder.
    (B)   Amount of Monthly Payments
    Each of my initial monthly payments will be in the amount of U.S. $ **1,806.28**. This amount may change.

    (C)   Monthly Payment Changes
    Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    (A)   Change Dates
    The interest rate I will pay may change on the first day of **November, 2008**, and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

    (B)   The Index
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.

BALARMN1 cl 9/14/05                               p. 1 of 3

**Exhibit A**

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Four and Seven Hundred Seventy-Seven Thousandths**            percentage point(s) (   4.7770 %) (the "Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on   **November 1, 2046**            at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.200**   % or less than   **7.2000** %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half**          percentage point(s) ( 1.5000  %) from the rate of interest I have been paying for the preceding six months.  In any event, my interest rate will never be greater than **13.2000**      % and will never be less than      **7.2000** %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice."

2.  Uniform Secured Note

Section 11 of the Note is modified, amended and supplemented to read, in its entirety, as follows:

"11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

(A)  **UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  **AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:

Exhibit A

(a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.   Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.   Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.   The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.   If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.*

**3.   Effect of Note Rider**

This Note Rider modifies, amends and supplements the Note.   To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note.   Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.

_____ (Seal)
LISA GREEN                        -Borrower

_____ (Seal)
DAVID GREEN                       -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

[Sign Original Only]

Exhibit A

## ADJUSTABLE RATE AND BALLOON PAYMENT RIDER
(LIBOR  Six-Month  Index  (As Published  In The  Wall Street  Journal)  - Rate Caps)

THIS ADJUSTABLE RATE AND BALLOON PAYMENT RIDER (the "Security Instrument Rider") is made this  **31st** day of **October, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to   **FREMONT INVESTMENT & LOAN** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**5060 LAKE PIERCE DRIVE    LAKE WHALES, FL 33898-8884**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.  THE NOTE IS PAYABLE IN FULL AT MATURITY.  BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE NOTE, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT.  THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE NOTE AT THAT TIME.  BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER NAMED IN THE NOTE, WILLING TO LEND BORROWER THE MONEY.  IF BORROWER REFINANCES THE NOTE AT MATURITY, BORROWER MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN ARE PAID ON THE NOTE.  FURTHER, IF BORROWER REFINANCES, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.**

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    Interest Rate and Monthly Payment Changes

Section 2 of the Note provides for an initial interest rate of  **7.2000**    % and states that the interest rate of the Note will change in accordance with Section 4 of the Note.  Borrower has executed a Balloon Payment Rider to Note (the "Note Rider") dated the same date as this Security Instrument Rider.  Among other things, the Note Rider modifies, amends, and supplements Sections 3 and 4 of the Note to read, in their entirety, as follows:

BALARMRD    rg 1/05/06                         p. 1 of 4

3.  **PAYMENTS**

(A)  **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **December 1, 2006**

I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On **November 1, 2036** (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

I will make my monthly payments at **2727 E IMPERIAL HIGHWAY, BREA CA 92821** or at a different place if required by the Note Holder.

(B)  **Amount of Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.   **$1,806.28**
This amount may change.

(C)  **Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly       payment in accordance with Section 4 of this Note.

4.  **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A)  **Change Dates**

The interest rate I will pay may change on the first day of **November** , **2008** , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B)  **The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.

(C)  **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Four and Seven Hundred Seventy-Seven Thousandths** percentage point(s) ( **4.7770** %) (the "Margin")to the CurrentIndex. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on **November 1, 2046** at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

BALARMR2  rg 1/05/06                    p. 2 of 4

Exhibit A

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.200** % or less than **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage point(s) ( **1.5000** %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than **13.2000** % and will never be less than **7.2000** %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice."

**B.   Effect of Note Rider**

The Note Rider contains the following provisions:

"This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect."

**C.   Transfer of the Property or a Beneficial Interest in Borrower**

**1.**   Until Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument shall be in effect as follows:

"Transfer of the Property or a Beneficial Interest in Borrower." As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

BALARMR3   rg   1/05/06                 p. 3 of 4

2.      After Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument described in Section C.1. above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall then be modified, amended and supplemented to read, in its entirety, as follows:

"Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate And Balloon Payment Rider.

_____ (Seal)           _____ (Seal)
LISA GREEN              -Borrower          DAVID GREEN              -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                   -Borrower

                                            [Sign Original Only]

BALARMR4 rg 1/05/06              p. 4 of 4

Exhibit A

```
INSTR # 2006276707
BK 07055 PGS 1751-1770 PG(s)20
RECORDED 11/15/2006 10:15:46 AM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
MTG DOC 994.00
INTANG TAX 568.00
RECORDING FEES 171.50
RECORDED BY S Wiggins
```

Return To:
FREMONT INVESTMENT & LOAN
P.O. BOX 34078
FULLERTON, CA  92834-34078

This document was prepared by:
BARBARA LICON

Privacy Act 5800

Alday-Donalson
Title Agency, Inc.
1201 S. Alexander St. Suite 110
Plant City, Florida 33566
Phone (813) 747-0214
Fax (813) 747-0215

[Space Above This Line For Recording Data]

# MORTGAGE

MIN Privacy Act 5800-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 31, 2006 together with all Riders to this document.

(B) "Borrower" is  LISA GREEN AND DAVID GREEN, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is FREMONT INVESTMENT & LOAN

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3010 1/01

(VMP) -6A(FL) (0005).01

Page 1 of 16          Initials:

VMP MORTGAGE FORMS - (800)521-7291

Exhibit B

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**
Lender's address is
**2727 E IMPERIAL HIGHWAY, BREA CA 92821**
(E) "Note" means the promissory note signed by Borrower and dated **October 31, 2006**
The Note states that Borrower owes Lender **Two Hundred Eighty-Four Thousand and**
**No/100 --------------------------------------------** Dollars
(U.S. $      **284,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **November 1, 2036**      .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

**Exhibit B**

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the   County                [Type of Recording Jurisdiction]
of   POLK                [Name of Recording Jurisdiction]:
LOT 28, TIMBERLAKE SUBDIVISION PHASE ONE, AS PER PLAT THEREOF, RECORDED IN PLAT BOOK 71, PAGE 23, OF THE PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

Parcel ID Number: 082928-936690-000280                which currently has the address of
5060 LAKE PIERCE DR                                          [Street]
LAKE WHALES                                   [City], Florida  33898-8884 [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: [signature]

-6A(FL) (0005).01                        Page 3 of 16                        Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in



Initials:

Exhibit B

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Initials: _____

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard



or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise

agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

Initials: _____

-6A(FL) (0005).01          Page 9 of 16          Form 3010  1/01

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _____

## Exhibit B

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument

Initials: _____

shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument,

-6A(FL) (0005).01                              Page 12 of 16                              Form 3010   1/01

Initials:

and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental

Initials: _____

-6A(FL) (0005).01                          Page 13 of 16                          Form 3010  1/01

Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (Seal)
WITNESS LAUREEN M. Quinn                           LISA GREEN                          -Borrower
                                                  $5718 South Dixie Hwy
                                                  W.P.B FIA 33544
L. Sebastinell.                                                                         (Address)

WITNESS L. Sebastinelli                           _____ (Seal)
                                                  DAVID GREEN                         -Borrower
                                                  5718 S Dixie Hwy
                                                  W.P.B FIA 33544
                                                                                       (Address)

_____ (Seal)                            _____ (Seal)
                  -Borrower                                         -Borrower


_____ (Address)                         _____ (Address)


_____ (Seal)                            _____ (Seal)
                  -Borrower                                         -Borrower


_____ (Address)                         _____ (Address)


_____ (Seal)                            _____ (Seal)
                  -Borrower                                         -Borrower


_____ (Address)                         _____ (Address)

VMP-6A(FL) (0005).01                    Page 15 of 16                    Form 3010  1/01

Exhibit B

STATE OF FLORIDA, _Palm Beach_ County ss:

The foregoing instrument was acknowledged before me this _31st day of October, 2006_ by _Lisa Green and David Green, wife and husband_

who is personally known to me or who has produced _DR. License_ as identification.



Notary Public

LAUREEN N. GALVIN
MY COMMISSION # DD 270669
EXPIRES: March 31, 2008
Bonded Thru Notary Public Underwriters

-6A(FL) (0005).01    Page 16 of 16    Form 3010  1/01

Initials: _____

**Exhibit B**

## ADJUSTABLE RATE AND BALLOON PAYMENT RIDER
(LIBOR Six-Month Index (As Published in The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE AND BALLOON PAYMENT RIDER (the "Security Instrument Rider") is made this **31st** day of **October, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **FREMONT INVESTMENT & LOAN** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**5060 LAKE PIERCE DRIVE    LAKE WHALES, FL 33898-8884**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY. THE NOTE IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE NOTE, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE NOTE AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER NAMED IN THE NOTE, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THE NOTE AT MATURITY, BORROWER MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN ARE PAID ON THE NOTE. FURTHER, IF BORROWER REFINANCES, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    **Interest Rate and Monthly Payment Changes**

Section 2 of the Note provides for an initial interest rate of **7.2000** % and states that the interest rate of the Note will change in accordance with Section 4 of the Note. Borrower has executed a Balloon Payment Rider to Note (the "Note Rider") dated the same date as this Security Instrument Rider. Among other things, the Note Rider modifies, amends, and supplements Sections 3 and 4 of the Note to read, in their entirety, as follows:

BALARMRD   rg 1/05/06                    p. 1 of 4

**Exhibit B**

3.  **PAYMENTS**

   (A)   Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **December 1, 2006**

I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On **November 1, 2036** (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

I will make my monthly payments at **2727 E IMPERIAL HIGHWAY, BREA CA 92821** or at a different place if required by the Note Holder.

   (B)   Amount of Monthly Payments

Each of my initial monthly payments will be in the amount of U.S.  **$1,806.28**

This amount may change.

   (C)   Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.  **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   (A)   Change Dates

The interest rate I will pay may change on the first day of **November , 2008** , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   (B)   The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.

   (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Four and Seven Hundred Seventy-Seven Thousandths** percentage point(s) ( **4.7770** %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on **November 1, 2046** at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

DAI.ARMR2  rg 1/05/06                    p. 2 of 4

**Exhibit B**

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.200** % or less than **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage point(s) ( **1.5000** %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than **13.2000** % and will never be less than **7.2000** %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice."

**B.   Effect of Note Rider**

The Note Rider contains the following provisions:

"This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect."

**C.   Transfer of the Property or a Beneficial Interest in Borrower**

**1.   Until Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument shall be in effect as follows:**

"Transfer of the Property or a Beneficial Interest in Borrower." As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**Exhibit B**

2.      After Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument described in Section C.1. above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall then be modified, amended and supplemented to read, in its entirety, as follows:

"Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.
Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate And Balloon Payment Rider.**

| | | | |
|---|---|---|---|
| _____ (Seal) | | _____ (Seal) | |
| LISA GREEN        -Borrower | | DAVID GREEN        -Borrower | |
| _____ (Seal) | | _____ (Seal) | |
| -Borrower | | -Borrower | |
| _____ (Seal) | | _____ (Seal) | |
| -Borrower | | -Borrower | |

[Sign Original Only]

BALARMR4  rg  1/05/06                    p 4 of 4

**Exhibit B**

INSTR # 2009095594   OR BK 07889   PG 1407   05/21/2009   09:20:38 AM
Richard M Weiss Clerk of County Polk County Recorded By Court

IN THE CIRCUIT COURT OF THE TENTH
JUDICIAL CIRCUIT IN AND FOR POLK COUNTY,
FLORIDA, CIVIL ACTION

HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE, UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
DECEMBER 1, 2006, FREMONT HOME LOAN
TRUST 2006-E

      Plaintiff

Vs.

LISA GREEN, et al.

      Defendant(s)



FILED

2009 MAY 19   AM 9: 45

CIRCUIT COURT CIVIL DEP'T
POLK COUNTY CLERK

CASE NO.: ___ -CA-002864

ORIGINAL

### SUMMARY FINAL JUDGMENT OF FORECLOSURE

THIS CAUSE came on to be heard before the Court upon Plaintiff's Complaint and Motion for Summary Final Judgment and, it appearing to the Court that due and legal service of process has been had upon the Defendants, and the Court having examined the record and being otherwise fully advised in the premises, the Court finds as follows:

A.     The Court has jurisdiction of the parties and subject matter of this case;

B.     Service of process has been duly and regularly obtained over LISA GREEN; DAVID GREEN; WATER SUPPLY, INC.; defendants.

C.     The Court finds that each of the following Defendants were dropped as parties in this case: UNKNOWN TENANT #1; UNKNOWN TENANT #2; AND ANY OTHER UNKNOWN PARTIES;

D.     The equities of this case are with Plaintiff and against Defendants herein upon the Mortgage sought to be foreclosed by Plaintiff as described in the Complaint;

E.     The time expended by Plaintiff's attorney of 9.0 hours is reasonable and a reasonable hourly fee for those services is $175.00 per hour, for a total of $1,575.00; but the fee is limited by agreement to $1,200.00; and

F.     Plaintiff was required to furnish copies of pleadings to all defendants pursuant to F.S. Chapter 48 and F.R.C.P., Rules 1.080, 1.500, and 1.510, and incurred reasonable expenses for photocopies and postage of $90.00.

G.     Plaintiff is entitled to the relief prayed for in the Complaint.

Whereupon, it is, ORDERED AND ADJUDGED that:

Exhibit C

1.    The Court has jurisdiction of the parties and the subject matter of the case;

2.    The equities of this case are with Plaintiff and against Defendants in accordance with the further provisions of this Final Judgment;

3.    There is due to Plaintiff on account of the mortgage sought to be foreclosed herein, the following sums of money:

| | | |
|---|---|---|
| a. | Principal | 282,510.87 |
| b. | Interest from 01/01/ 08 through 12/20/08 55.73 (per diem) | 19,974.95 |
| c. | Additional Interest from 12/21/08 through 05/18/09 | 8,303.77 |
| d. | Late charges prior to acceleration | 741.75 |
| e. | Escrow deficit | 17,312.79 |
| f. | Property inspection charges | 45.24 |
| g. | Property Maintenance | 180.50 |
| h. | Property appraisal | 300.00 |
| i. | BPO | 345.00 |
| j. | Filing Fee | 258.00 |
| k. | Service of Process | 195.00 |
| l. | Title search | 275.00 |
| m. | Photocopies and postage | 90.00 |
| n. | Plaintiff's Attorneys Fee | 1,200.00 |
| | **TOTAL** | **$331,732.87** |

Plaintiff's attorney's Fee and Costs, are set forth in the paragraphs above.

4.    Plaintiff holds a lien for the total sum specified in the preceding paragraph superior to any claim or estate of the Defendants, on the following described property in POLK County, Florida:

Lot 28, TIMBERLAKE SUBDIVISION PHASE ONE, as per plat thereof, recorded in Plat Book 71, Page 23, of the Public Records of Polk County, Florida.

also known as: 5060 LAKE PIERCE DR , LAKE WALES, FL 33898-8884

5.    If the total sum with interest at the rate prescribed by law (8.00%) and all costs of this action accruing subsequent to this judgment are not paid, the Clerk of this Court shall sell the property at public sale to the highest bidder for cash, except as set forth hereinafter, on ____July 16____, 2009, at 9:00 a.m. at Courtroom

Exhibit C

OR BK 07889 PG 1409

8-D, 8th Floor,, 255 North Broadway, , Bartow, FL 33830, in accordance with Chapter 45, Florida Statutes.

6.     The said sale shall not take place unless a representative of the Plaintiff is present. If there is no representative, then the Clerk shall cancel the sale and the Plaintiff's attorney shall secure a new sale date. If a sale does occur, in the absence of a representative of the Plaintiff, the sale shall be null and void and no documents shall be issued by the Clerk, except to inform this Court of what may have occurred.

7.     In the event that the sale needs to be postponed or cancelled, upon Plaintiff's notification to foreclosure clerk in writing, the Clerk shall cancel the sale without further order from the Court.

8.     Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property at the sale. If Plaintiff or Plaintiff's Assignee is the purchaser, the Clerk shall credit Plaintiff's or Plaintiff's Assignee's bid with the total sum with interest and costs accruing subsequent to this judgment, and upon further Order of the Court such sums expended by Plaintiff subsequent to this judgment for taxes, insurance or protection of the property, or such part of it as is necessary to pay the bid in full.

9.     In the event of a redemption by any party to this action, the redemption amount shall include all post-judgment advances to preserve or protect the property pursuant to the Mortgage or Note and all post-judgment interest, court costs and attorneys fees paid or incurred by Plaintiff. The redeeming party shall tender to Plaintiff the redemption amount demanded and thereafter either party may move this Court to determine the reasonableness of the redemption amount.

10.     If Plaintiff is the purchaser, the Clerk shall issue title to Plaintiff, or its Assignee (upon filing Assignment of Bid with Clerk), without further payment or Order of this Court, except as herein provided.

Exhibit C

11.     The purchaser, in addition to the amount of the successful bid, shall pay for the documentary stamps to be affixed to the Certificate of Title and for the Clerk's fees for receiving and disbursing funds into and from the Registry.

12.     On filing the Certificate of Title the Clerk shall distribute the proceeds of this sale, so far as they are sufficient, by paying: first, all the Plaintiff's costs; second, Plaintiff's attorneys fees; third, the total sum due to Plaintiff less the items paid plus interest at the rate prescribed by law from this date to the date of the sale; and by retaining any amount remaining pending the further order of this Court.

13.     If the real property described herein is a condominium unit, or subject to a HOA and the appropriate association is a party, then the purchaser taking title as a result of the foreclosure sale shall be liable to the Association for assessments which may be due pursuant to Florida Statutes Section 718.116(1)(b) or section 720.3085 as applicable.

14.     **SEE IMPORTANT NOTICE ATTACHED HERETO AS EXHIBIT 1 AND INCORPORATED HEREIN PURSUANT TO F.S. §45.031.**

15.     On filing the Certificate of Sale, the Right of Redemption shall terminate and Defendants, LISA GREEN; DAVID GREEN; WATER SUPPLY, INC.; and all persons claiming under or against them since the filing of the Notice of Lis Pendens are foreclosed of all estate or claim in the property except such interests as may by statute be superior to the mortgage being foreclosed or by statute survive foreclosure and sale of the property.

16.     Upon filing of the Certificate of Title, the purchaser at the sale shall be let into possession of the property.

17.     The Clerk, at the time of issuance of the Certificate of Title, or thereafter, upon further Order of Court, shall issue a Writ of Possession of the property to accomplish possession by Purchaser.

Exhibit C

OR BK 07889 PG 1411

18.    Jurisdiction of this action is retained to enter further Orders as are proper including, without limitation, enforcement of Writs of Possession or deficiency judgments.

DONE AND ORDERED in Chambers, at Bartow, POLK County, Florida, this _____ 18th _____ day of _____ May 20 09 .

CIRCUIT JUDGE

Copies Furnished To:
Florida Foreclosure Attorneys, PLLC
1230 S. Myrtle Avenue, Suite 105
Clearwater, Florida 33756-3445
and
All persons on the attached Service List
Address of Plaintiff: P.O. Box 4387,  Houston, TX  772104387
Our File A811190/AN

PER ADMINISTRATIVE ORDER
NO. 3-15.7
FORECLOSURE SALES WILL BE
CONDUCTED
PER SCHEDULE F

Exhibit C

OR BK 07889 PG 1412

## EXHIBIT "1"

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, POLK COUNTY COURTHOUSE, 255 BROADWAY, BARTOW, FL 33830, (863) 534-4488 WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT FLORIDA RURAL LEGAL SERVICES – LAKELAND (863) 688-7376 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT FLORIDA RURAL LEGAL SERVICES – LAKELAND FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

Exhibit C

OR BK 07889 PG 1413

**SERVICE LIST**

**HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE, UNDER THE POOLING AND SERVICING
AGREEMENT DATED AS OF DECEMBER 1, 2006,
FREMONT HOME LOAN TRUST 2006-E**

vs.

**LISA GREEN, et al.**

MICHELLE R. DONAHUE, ESQ. attorney for
LISA GREEN
545 Avenue K, SE
Winter Haven, FL 33880

MICHELLE R. DONAHUE, ESQ. attorney for
DAVID GREEN
545 Avenue K, SE
Winter Haven, FL 33880

KEVIN M. KOHL, ESQ. attorney for
WATER SUPPLY, INC.
Law Office of Kevin M. Kohl
PO Box 3855
LAKE WALES, FL 33859

Our File No.: A811190/DD

Exhibit C

OR BK 07889 PG 1414

## "Schedule F"

All sales are to be held in Courtroom 8D, on the Eighth floor, of the Polk County Courthouse located at 255 North Broadway Avenue, Bartow, Florida. Please note that the main entrance is located on Church Street. No entry is possible from Broadway Avenue. In the event any temporary change of location is necessary, the Clerk shall post a "Notice of Change" at the sale location directing the bidders to the temporary sale location.

If you are a person with disabilities who needs any accommodation in order to participate in this proceeding, you are entitled at no cost to you, to the provision of certain assistance. Please contact the Office of the Court Administrator, (863) 534-4690, within two (2) working days of your receipt of this notice; if you are hearing or voice impaired, call TDD (863) 534-7777 or Florida Relay Services 711.

Exhibit C

# MEMORANDUM

To: Clerk of Courts

**Attention: Foreclosure Clerk**

Date: 5/19 , 2009

Re:   HSBC BANK — v - GREED

08 CA 2864

FILED

2009 MAY 19  AM 9: 45

CIRCUIT COURT CIVIL DIV
POLK COUNTY CLERK

Please set the foreclosure sale in the above-styled cause as follows:

☒ In the normal course of setting sales

☐ Not less than _____ days from the date of the order

Thank You.

04   DICK PRINCE

04/01/2009

Exhibit C

 Litton Loan Servicing®

4828 Loop Central Drive
Houston, Texas 77081-2226
Telephone 1-800-247-9727
Fax 713-960-9561
www.littonloan.com

# Specified Bid

9/2/2009

TAKE TITLE IN THE NAME OF: HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of December 1, 2006, Fremont Home Loan Trust 2006-E

| | | | |
|---|---|---|---|
| LLS #: | ▮3758 | ATTY FAX: | 7274461723 |
| ATTORNEY: | Golson Law Firm | MI #: | 00000 |
| MORTGAGOR: | Lisa Green | MI CO: | CONV |
| ATTY FILE: | | DUE DATE: | 2/1/2008 |
| INT RATE: | 0.0720% | PER DIEM: | $55.73 |
| SALE DATE: | 9/17/2009 | | |
| Specified Bid: | $270,000.00 | FORECLOSURE COORDINATOR: | |
| MI CONTACT: | | ATTY FEE COSTS: | |

If you cannot take title in the name of the above beneficiary or if you are missing any assignment(s), you must advise the foreclosure processor immediately. If you have any questions regarding these bidding instructions, please correspond with the appropriate foreclosure processor within the vendor system.

Within 24 hours of the FC sale, please update the vendor system with the sale held date as well as the sale result information. Final invoices should be submitted through New Invoice.

Exhibit D

# FLORIDA FORECLOSURE ATTORNEYS PLLC
### A DEFAULT SERVICE LAW FIRM

1230 SOUTH MYRTLE AVENUE
SUITE 105
CLEARWATER, FLORIDA 33756
TELEPHONE (727) 446-4826
FACSIMILE (727) 446-3721

359 SOUTH FEDERAL HIGHWAY
BOCA RATON, FLORIDA 33432
TELEPHONE (561) 391-8600
FACSIMILE (561) 391-7610

September 11, 2009

Tremear
Pro-Vest

RE:     HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE, UNDER THE
        POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2006,
        FREMONT HOME LOAN TRUST 2006-E vs. LISA GREEN
        Case No.:    08-02864
        Our File No.:  A811190

Dear Sir or Madam:

Enclosed are the following items necessary for your attendance at the foreclosure sale at
Courtroom 8-D, 8th Floor, 255 North Broadway, Bartow, FL, 33830 on September 17, 2009:

- Certificate of Sale with envelopes
- Check for Clerk's sale fee
- Check for your fee

Please begin bidding at $100.00 and continue in increments of $1,000.00, to a maximum bid of
$0. Thank you for your assistance in this matter.

Very truly yours,

Tara Alicea
Legal Assistant

Exhibit E

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT IN AND FOR
POLK COUNTY, FLORIDA, CIVIL ACTION

HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE, UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
DECEMBER 1, 2006, FREMONT HOME LOAN
TRUST 2006-E

      Plaintiff

vs.

LISA GREEN, et al.

      Defendant(s)

CASE NO.: 08-02864

**NOTICE OF FILING**

    COMES NOW Plaintiff, HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE,
UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2006,
FREMONT HOME LOAN TRUST 2006-E, by and through its undersigned attorney, and gives
notice of filing the attached AFFIDAVIT OF JAMES LIBURDI in the above action.

    I HEREBY CERTIFY that a true copy of the foregoing was furnished by regular U.S. Mail
to all parties on the attached service list this _____ 1st _____ day of October, 2009.

                        FLORIDA FORECLOSURE ATTORNEYS, PLLC

                        Laura L. Walker, Esquire (FBN 509434)
                        Roger D. Bear, Esquire (SPN 290511, FBN 304212)
                        Joshua D. Donnelly, Esquire (FBN 64788)
                        Jessica E. Conte, Esquire (FBN 58412)
                        1230 South Myrtle Avenue, Suite 105
                        Clearwater, FL 33756-3445
                        Phone: (727) 446-4826

Our File No.: A811190/TA

---

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR**

---

Exhibit F

*A811190*



IN THE CIRCUIT COURT OF THE
10TH JUDICIAL CIRCUIT, IN AND FOR
POLK COUNTY, FLORIDA

CIVIL DIVISION
CASE NO.: 08-02864

HSBC BANK,

     Plaintiff,

vs.

LISA GREEN, et al

     Defendants.
_____/

### <u>AFFIDAVIT OF JAMES LIBURDI</u>

STATE OF FLORIDA     )
                       )SS:
COUNTY OF _____  )

     BEFORE ME, this date personally appeared JAMES LIBURDI, and says as follows:

1. My name is JAMES LIBURDI and I am an Independent Foreclosure Sales Contractor for ProVest LLC.

2. I am the Foreclosure Sales Bidding Agent for Polk County, Florida.

3. My job as Foreclosure Sales bidding agent is to bid up to the amount requested by the client, as verified on the sale bid worksheet provided. In this case, the bid along with all of the Foreclosure Documentation was sent to ProVest on the September 14, 2009 and received by me on September 15, 2009.

4. The documentation that was received in my office on the 15th of September, 2009 had specific bidding instructions to bid up to the amount

Page 1 of 3

Exhibit F

of the debt, or $270,000.00. A copy of the bidding instructions received by me is attached as Exhibit A.

5.    The bid worksheet was given to me in plenty of time for the sale and was ready to bid on Case Number 08-02864. I erroneously transposed the maximum bid amount from $270,000.00 to $27,000.00 on a personal spread sheet prepared by me for use at the sale. A review of my spreadsheet indicates that I erroneously placed a comma over part of the zero, resulting in the error described herein. A copy of my spreadsheet is attached as Exhibit B.

6.    As the sales began, the Foreclosure Sales Clerk who was reading the docket for that day, called out Court Case Number 08-02854 and the bidding started for this Case Number. There was a Third Party Bidder there that was bidding on this property at issue in Case Number 08-02854. Due to the error on my spreadsheet, I mistakenly believed that the Maximum Bid Amount for the property was $27,000.00 and not the actual Maximum Bid of $270,000.00 as indicated on Exhibit A.

7.    I did not realize my mistake until sales were over and I called my sale results to Dominique DeJesus (ProVest Team Member) who caught the error at once. Dominique pointed this out and at that time I immediately went back to the court house to see if the investor had left the court house. He was not there so I left the court house at that time.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JAMES LIBURDI

Page 2 of 3

Sworn to and subscribed before me this 25th day of September, 2009.

DEBORAH K HAAGER
Notary Public - State of Florida
My Comm. Expires Apr 4, 2013
Commission # DD 870133
Bonded Through National Notary Assn.

_Deborah K Haager_
NOTARY PUBLIC

Notary Public, State of _Florida_
Commissioned Name of Notary Public _Deborah K Haager_
Personally known ✓ or produced identification_____
Type of Identification produced _____

Page 3 of 3

Exhibit F

# FLORIDA FORECLOSURE ATTORNEYS PLLC
### A DEFAULT SERVICE LAW FIRM

1230 SOUTH MYRTLE AVENUE
SUITE 105
CLEARWATER, FLORIDA 33756
TELEPHONE (727) 446-4826
FACSIMILE (727) 446-1724

399 SOUTH FEDERAL HIGHWAY
BOCA RATON, FLORIDA 33432
TELEPHONE (561) 391-8600
FACSIMILE (561) 391-7610

September 11, 2009

Tremear
Pro-Vest

RE:    HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE, UNDER THE
       POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2006,
       FREMONT HOME LOAN TRUST 2006-E vs. LISA GREEN
       Case No.:    08-02884
       Our File No.:  A811190

Dear Sir or Madam:

Enclosed are the following items necessary for your attendance at the foreclosure sale at
Courtroom 8-D, 8th Floor, 255 North Broadway, Bartow, FL, 33830 on September 17, 2009:

- Certificate of Sale with envelopes
- Check for Clerk's sale fee
- Check for your fee

Please begin bidding at $100.00 and continue in increments of $1,000.00, to a maximum bid of
$100. Thank you for your assistance in this matter.

Very truly yours,

Tara Alicea
Legal Assistant

Exhibit F

DAILY SALE LOG
SHEET
9/17/2009

78,100  11 X 25 = $ 275.00

1500

| Case # | Plaintiff | Defendant | Attorney | Open Bid | Top Bid | Result |
|--------|-----------|-----------|----------|----------|---------|--------|
| 08-02864 | HSBC Bank USA | Green | Fl Floreclosure | 100 | 27,000.00 | 27,000 Idea |
| 08-03397 | US Bank National | Guerrero | FDLG | 100 | 78,102.00 | 78,101 |
| 08-07722 | Suntrust Bank | Goldson | Spear Hoffman | 100 | 273,000.00 | |
| 08-07772 | Deutsche Bank | Gonzalez | Popkin&Rosaler | 100 | 40,500.00 | . |
| 08-08735 | Suntrust Bank | Nunez | Spear Hoffman | 100 | CX | |
| 08-08756 | Citibank | Rodiguez | FDLG | 100 | CX | |
| 08-12336 | Wachovia Bank | Hernandez | Trenam Kemker | 100 | 23,660.09 | |
| 09-00184 | Wachovia Bank | Nasiri | Trenam Kemker | 100 | 29,771.33 | |
| 09-02336 | Wachovia Bank | Henderson | Trenam Kemker | 100 | 18,617.29 | |
| 09-03193 | Beneficial Florida | Vasil | Watson | 100 | 78,448.58 | |
| 09-04160 | Chase Home Finance | Clark | Kass Shuler | 100 | 43,477.65 | 43,478.65 |
| | | | | | . | |
| 11 packages | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Exhibit F

**SERVICE LIST**

**HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE, UNDER THE POOLING AND SERVICING
AGREEMENT DATED AS OF DECEMBER 1, 2006,
FREMONT HOME LOAN TRUST 2006-E**

vs.

**LISA GREEN, et al.**

MICHELLE R. DONAHUE, ESQ. attorney for
LISA GREEN
545 Avenue K, SE
Winter Haven, FL  33880

MICHELLE R. DONAHUE, ESQ. attorney for
DAVID GREEN
545 Avenue K, SE
Winter Haven, FL  33880

KEVIN M. KOHL, ESQ. attorney for
WATER SUPPLY, INC.
Law Office of Kevin M. Kohl
PO Box 3855
LAKE WALES, FL  33859

AMIR KHALIL
P.O. BOX 228
Lakeland, Fl  33802

Our File No.: A811190/DD

Exhibit F

IN THE CIRCUIT COURT FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

Case Number: 2008-CA-2864

HSBC BANK USA NATIONAL ASSOCIATION AS TRUSTEE UNDER THE POOLING
AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2006 FREMONT HOME
LOAN TRUST 2006-E,
                              Plaintiff,

Vs.

LISA GREEN, ET AL,
                              Defendant.

## CERTIFICATE OF SALE

The undersigned Clerk of the Court certifies that notice of public sale of the

property described in the order or final judgment was published in Polk County

Democrat, a newspaper circulated in Polk County, Florida, in the manner shown by

the proof of publication filed in this cause, and on SEPTEMBER 17, 2009 the property was

offered for public sale to the highest and best bidder for cash. The highest and best bid

received for the property was submitted by IDEAL HOUSES, PO BOX 288, LAKELAND FL
33802,

to whom the property was sold. The proceeds of the sale are retained for distribution in

accordance with the order or final judgment.

WITNESS my hand and the seal of this court on this 17 day of
September , 2009.

(Court Seal)

RICHARD M. WEISS
Clerk of the Circuit Court

By Betty R Peterson
Deputy Clerk

Composite Exhibit G



FILED - CIVIL
POLK COUNTY CLER
CIRCUIT COURT CIVIL

2009 SEP 16  AM 11: 49

## AFFIDAVIT OF PUBLICATION

# The Polk County Democrat

Published Semi-Weekly

Bartow, Polk County, Florida

Case No: 53-2008-CA-002864

STATE OF FLORIDA

COUNTY OF POLK:

Before the undersigned authority personally appeared Shirley J. Whitaker, who on oath says that he or she is Classified Manager of The Polk County Democrat, a newspaper published at Bartow in Polk County, Florida; that the attached copy of advertisement, being a Notice of Sale in the matter of HSBC Bank USA, National Association vs. Lisa Green, et al., in the Circuit Court, was published in said newspaper in the issues of Sept 2, 9, 2009.

Affiant further says that The Polk County Democrat is a newspaper published at Bartow, in said Polk County, Florida, and that the said newspaper has heretofore been continuously published in said Polk County, Florida, each Wednesday and Saturday and has been entered as periodicals matter at the post office in Bartow, in said Polk County, Florida, for a period of 1 year next preceding the first publication of the attached copy of advertisement; and affiant further says that he or she has neither paid nor promised any person, firm or corporation any discount, rebate, commission or refund for the purpose of securing this advertisement for publication in the said newspaper.

Signed _Shirley J. Whitaker_

Sworn to and subscribed before me this 15th day of Sept. 2009, by Shirley J. Whitaker, who is personally known to me.

_C. Joanne Taylor_
(Signature of Notary Public)

C. Joanne Taylor
Notary Public

C. JOANNE TAYLOR
MY COMMISSION # DD 825639
EXPIRES: January 4, 2011
Bonded Thru Pichard Insurance Agency

# 2278719

IN THE CIRCUIT COURT OF THE
TENTH JUDICIAL CIRCUIT IN AND
FOR POLK COUNTY, FLORIDA
CIVIL ACTION
HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE,
UNDER THE POOLING AND SER-
VICING AGREEMENT DATED AS
OF DECEMBER 1, 2006, FREMONT
HOME LOAN TRUST 2006-E
    Plaintiff
vs.
LISA GREEN, et al.,
    Defendant(s)
        CASE NO.:
    53-2008-CA-002864
    NOTICE OF SALE
Notice is hereby given that, pursuant
to an Order Canceling and Reached-
uling Foreclosure Sale dated July 20,
2009, entered in Civil Case Number
53-2008-CA-002864, in the Circuit
Court for POLK County, Florida,
wherein HSBC BANK USA, NATION-
AL ASSOCIATION, AS TRUSTEE,
UNDER THE POOLING AND SER-
VICING AGREEMENT DATED AS
OF DECEMBER 1, 2006, FREMONT
HOME LOAN TRUST 2006-E is the
Plaintiff, and LISA GREEN, et al., are
the Defendants, I will sell the proper-
ty situated in POLK County, Florida,
described as:
    Lot 138, TIMBERLAKE SUBDI-
VISION PHASE ONE, as per plat
thereof, recorded in Plat Book
71, Page 23, of the Public
Records of Polk County, Florida.
at public sale, to the highest and best
bidder, for cash, 50, 8th Floor, 255
North Broadway, Bartow, FL 33830 at
9:00 a.m. on the 17th day of Septem-
ber, 2009.
Any person claiming an interest in
the surplus from the sale, if any, other
than the property owner as of the
date of the lis pendens must file a
claim within 60 days after the sale.
All sales are to be held at the Court-
room 50, 8th floor, of the Polk Coun-
ty Courthouse located at 255 North
Broadway Avenue, Bartow, Florida.
Please note that the main entrance is
located on Church Street. No entry is
possible from Broadway Avenue. In
the event any temporary change is
necessary, the Clerk will post a
"Notice of Change" at the sale loca-
tion directing the bidders to the tem-
porary sale location.
If you are a person with disabilities
who needs any accommodation in
order to participate in this proceed-
ing, you are entitled at no cost to you,
to the provision of certain assistance.
Please contact the Office of the Court
Administrator, (863) 534-4690, within
two (2) working days of your receipt
of this notice; if you are hearing or
voice impaired, call TDD (863) 534-
7777 or Florida Relay Services 711.
Dated: July 24, 2009.
Clerk of the Court
by /s/ Carolyn Mack
As Deputy Clerk
(SEAL)
Sept 2, 9, 2009-2278719

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

Case Number: 2008-CA-2864

HSBC BANK USA, NATIONAL ASSOCIATION
vs
LISA GREEN, ET AL

CLERK'S CERTIFICATE OF MAILING

STATE OF FLORIDA
COUNTY OF POLK

    I, RICHARD M. WEISS, Clerk of the Circuit Court in and for Polk County,
Florida do hereby certify that on the 17 day of SEPTEMBER, 2009, I sent by United
States mail, postage prepaid one copy of the CERTIFICATE OF SALE, in the above
entitled cause to the following named defendants, to wit:

    **SEE ATTACHED**

    WITNESS my hand and official seal of the office this 17 day of SEPTEMBER,
2009.

    Richard M. Weiss
    Clerk of the Circuit Court

    By _____
    Deputy Clerk

Composite Exhibit G

**SERVICE LIST**

**HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE, UNDER THE POOLING AND SERVICING
AGREEMENT DATED AS OF DECEMBER 1, 2006,
FREMONT HOME LOAN TRUST 2006-E**

vs.

**LISA GREEN, et al.**

MICHELLE R. DONAHUE, ESQ. attorney for
LISA GREEN
545 Avenue K, SE
Winter Haven, FL  33880

MICHELLE R. DONAHUE, ESQ. attorney for
DAVID GREEN
545 Avenue K, SE
Winter Haven, FL  33880

KEVIN M. KOHL, ESQ. attorney for
WATER SUPPLY, INC.
Law Office of Kevin M. Kohl
PO Box 3855
LAKE WALES, FL  33859

Our File No.: A811190/DD

Composite Exhibit G

IN THE CIRCUIT COURT FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

Case Number: <u>2008-CA-2864</u>

HSBC BANK USA NATIONAL ASSSOCIATION AS TRUSTEE UNDER THE POOLING
AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2006, FREMONT HOME
LOAN TRUST 2006-E,
                    Plaintiff,

Vs.

LISA GREEN, ET AL,
                    Defendant.

## AMENDED CERTIFICATE OF SALE

The undersigned Clerk of the Court certifies that notice of public sale of the

property described in the order or final judgment was published in Polk County

Democrat, a newspaper circulated in Polk County, Florida, in the manner shown by

the proof of publication filed in this cause, and on SEPTEMBER 17, 2009 the property was

offered for public sale to the highest and best bidder for cash.  The highest and best bid

received for the property was submitted by IDEAL HOUSES LLC, PO BOX 288, LAKELAND
FL 33802,

to whom the property was sold.  The proceeds of the sale are retained for distribution in

accordance with the order or final judgment.

WITNESS my hand and the seal of this court on this 18 day of
September , 2009..

(Court Seal)

RICHARD M. WEISS
Clerk of the Circuit Court

By Betty R Paterson
Deputy Clerk

Composite Exhibit G

FILED – CIVIL
POLK COUNTY CLER
CIRCUIT COURT CIVIL

2009 SEP 16  AM 11: 4

### AFFIDAVIT OF PUBLICATION

## The Polk County Democrat

Published Semi-Weekly

Bartow, Polk County, Florida

Case No: 53-2008-CA-002864

STATE OF FLORIDA

COUNTY OF POLK:

Before the undersigned authority personally appeared Shirley J. Whitaker, who on oath says that he or she is Classified Manager of The Polk County Democrat, a newspaper published at Bartow in Polk County, Florida; that the attached copy of advertisement, being a Notice of Sale in the matter of HSBC Bank USA, National Association vs. Lisa Green, et al., in the Circuit Court, was published in said newspaper in the issues of Sept 2, 9, 2009.

Affiant further says that The Polk County Democrat is a newspaper published at Bartow, in said Polk County, Florida, and that the said newspaper has heretofore been continuously published in said Polk County, Florida, each Wednesday and Saturday and has been entered as periodicals matter at the post office in Bartow, in said Polk County, Florida, for a period of 1 year next preceding the first publication of the attached copy of advertisement; and affiant further says that he or she has neither paid nor promised any person, firm or corporation any discount, rebate, commission or refund for the purpose of securing this advertisement for publication in the said newspaper.

Signed _Shirley J. Whitaker_

Sworn to and subscribed before me this 15th day of Sept. 2009, by Shirley J. Whitaker, who is personally known to me.

_C. Joanne Taylor_
(Signature of Notary Public)

C. Joanne Taylor
Notary Public

C. JOANNE TAYLOR
MY COMMISSION # DD 828639
EXPIRES: January 4, 2011
Bonded Thru Pichus Insurance Agency

# 2278719

IN THE CIRCUIT COURT OF TH
TENTH JUDICIAL CIRCUIT IN AN
FOR POLK COUNTY, FLORID,
CIVIL ACTION
HSBC BANK USA NATIONA,
ASSOCIATION, AS TRUSTEE
UNDER THE POOLING AND SER
VICING AGREEMENT DATED A
OF DECEMBER 1, 2006, FREMONT
HOME LOAN TRUST 2006-B
Plaintiff

vs.
LISA GREEN, et al.
Defendant(s).

CASE NO.:
53-2008-CA-002864
NOTICE OF SALE
Notice is hereby given that, pursuant
to an Order Canceling and Reschedul-
uling Foreclosure Sale dated July 20,
2009, entered in Civil Case Number
53-2008-CA-002864, in the Circuit
Court for POLK County, Florida,
wherein HSBC BANK USA, NATION-
AL ASSOCIATION, AS TRUSTEE,
UNDER THE POOLING AND SER-
VICING AGREEMENT DATED AS
OF DECEMBER 1, 2006, FREMONT
HOME LOAN TRUST 2006-B is the
Plaintiff, and LISA GREEN, et al., are
the Defendants, I will sell the proper-
ty situated in POLK County, Florida,
described as:
Lot 186, TIMBERLANE SUBDI-
VISION PHASE ONE, as per plat
thereof, recorded in Plat Book
71, Page 22, of the Public
Records of Polk County, Florida,
at public sale, to the highest and best
bidder, for cash, 80, 8th Floor, 255
North Broadway, Bartow, FL 33830 at
9:00 a.m. on the 17th day of Septem-
ber, 2009.
Any person claiming an interest in
the surplus from the sale, if any, other
than the property owner as of the
date of the lis pendens must file a
claim within 60 days after the sale.
All sales are to be held at the Court-
room 4G, 8th floor, of the Polk Coun-
ty Courthouse located at 255 North
Broadway Avenue, Bartow, Florida.
Please note that the main entrance is
located on Church Street. No entry is
possible from Broadway Avenue. In
the event any temporary change is
necessary, the Clerk will post a
"Notice of Change" at the sale loca-
tion directing the bidders to the tem-
porary sale location.
If you are a person with disabilities
who needs any accommodation in
order to participate in this proceed-
ing, you are entitled at no cost to you,
to the provision of certain assistance.
Please contact the Office of the Court
Administrator, (863) 534-4690, within
two (2) working days of your receipt
of this notice; if you are hearing or
voice impaired, call TDD (863) 534-
7777 or Florida Relay Services 711.
Dated: July 24, 2009.
Clerk of the Court
by /s/ Carolyn Mack
As Deputy Clerk
(SEAL)
Sept 2, 9, 2009-2278719

Composite Exhibit G

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT IN AND FOR POLK COUNTY, FLORIDA,
CIVIL ACTION

HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE, UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
DECEMBER 1, 2006, FREMONT HOME LOAN
TRUST 2006-E

      Plaintiff

Vs.

LISA GREEN, et al.

      Defendant(s)

CASE NO.: 08-02864

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a true and correct copy of the Plaintiff's Objection to Sale and Motion to
Set Aside Foreclosure Sale has been furnished by U.S. Mail to Amir Khalil at the following P.O.
BOX 228 Lakeland, Florida 33802 ~~that~~ on this __28__ day of September 2009.

FLORIDA FORECLOSURE ATTORNEYS, PLLC

Laura K Walker, Esquire (FBN 600434)
Roger D. Bear, Esquire (FBN 299511, FBN 304212)
Joshua D. Donnelly, Esquire (FBN 64788)
Jessica E. Conte, Esquire (FBN 53412)
1230 South Myrtle Avenue, Suite 105
Clearwater, FL 33756-3445
Phone: (727) 446-4826

Our File No.: A811100/TA

Exhibit H

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT IN AND FOR POLK COUNTY, FLORIDA.
CIVIL ACTION

HSBC BANK USA, NATIONAL ASSOCIATION, AS     CASE NO.: 08-02884
TRUSTEE, UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
DECEMBER 1, 2006, FREMONT HOME LOAN
TRUST 2006-E

        Plaintiff

vs.

LISA GREEN, et al,

        Defendant(s)

*PLAINTIFF'S OBJECTION TO SALE AND MOTION TO SET ASIDE FORECLOSURE SALE*

COMES NOW Plaintiff, HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE, UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2006, FREMONT HOME LOAN TRUST 2006-E, and files this its Motion to Set Aside Foreclosure Sale, and as grounds thereof states as follows:

1.     On or about May 18, 2009 this Court entered a Final Summary Judgment, an Order Canceling and Rescheduling Sale was entered on July 20, 2009 that scheduled a foreclosure sale date for September 17, 2009, at the POLK County Courthouse, Florida.

2.     The foreclosure sale was held as scheduled on September 17, 2009.

3.     The Final Summary Judgment amount entered was $331,732.87, based on that judgment amount the Plaintiff came up with a maximum bid amount of 270,000.00. The Plaintiff forwarded the maximum bid amount of $270,000.00 to the counsel. Plaintiff's Counsel than forwarded the maximum bid amount to the Sale Attendee James Lidurdi.

4.     The Sale Attendant James Lidurdi was instructed to start bidding at $100.00 and continue with increments of $1,000.00 to the maximum bid amount of $270,000.00, should a third party bidder enter the bid, bid the maximum bid amount. James Lidurdi failed to bid the maximum bid amount and therefore stopped bidding at $27,000.00.

5.     In addition Plaintiff also requested that the sale be rescheduled for a later date as the Plaintiff is reviewing the file for loss mitigation. The instructions to reschedule the foreclosure sale were received by the Plaintiff's attorney after the sale had been commenced.

---

*THIS COMMUNICATION IS FROM A DEBT COLLECTOR*

---

Exhibit H

6.    The Certificate of Sale was issued on September 17, 2009.

WHEREFORE, Plaintiff respectfully requests this Court enter an Order Setting Aside Certificate of Sale, dated September 17, 2009.

I HEREBY CERTIFY that copies of the foregoing instrument were furnished by regular U.S. Mail to all parties on the attached service list, this 21st day of September, 2009.

FLORIDA FORECLOSURE ATTORNEYS, PLLC

Laura L. Walker, Esquire (FBN 509434)
Roger D. Bear, Esquire (FBN 200611, FBN 304212)
Joshua D. Donnelly, Esquire (FBN 54788)
Jessica E. Conte, Esquire (FBN 564131)
1230 South Myrtle Avenue, Suite 105
Clearwater, FL 33756-3445
Phone: (727) 446-4826

Our File No.: AS11190/EA

THIS COMMUNICATION IS FROM A DEBT COLLECTOR

Exhibit H

IN THE CIRCUIT COURT OF THE TENTH
JUDICIAL CIRCUIT IN AND FOR POLK
COUNTY, FLORIDA, CIVIL ACTION

CASE NO.: 08-02864
CA

HSBC BANK USA, NATIONAL ASSOCIATION,
AS TRUSTEE, UNDER THE POOLING AND
SERVICING AGREEMENT DATED AS OF
DECEMBER 1, 2006, FREMONT HOME LOAN
TRUST 2006-E

     Plaintiff

vs.

LISA GREEN, et al.

     Defendant(s)

INSTR # 2009175085
OK 07982 PG 0181 PG(s)1
RECORDED 09/30/2009 09:34:39 AM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
DEED DOC 189.00
RECORDING FEES 0.00
RECORDED BY P Craig

### CERTIFICATE OF TITLE

The undersigned Clerk of the Court certifies that he/she executed and filed a Certificate of Sale in this action on September 17, 2009, for the property described herein and that no objections to the sale have been filed within the time allowed for filing objections.

The following property in POLK County, Florida:

     Lot 28, TIMBERLAKE SUBDIVISION PHASE ONE, as per plat thereof, recorded in Plat Book 71, Page 23, of the Public Records of Polk County, Florida.

was sold to:

     IDEAL HOUSES, LLC
     PO BOX 288
     LAKELAND, FL 33802

September, 20 09    WITNESS my hand and the seal of this Court on the 30 day of

     Richard M. Weiss
     CLERK OF THE CIRCUIT COURT

By: _____
     Deputy Clerk

Our File No.: A811180/

R. Circuit Civil

Exhibit I

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

Case Number: 2008-CA-2864

HSBC BANK USA, NATIONAL ASSOCIATION
vs
LISA GREEN, ET AL

CLERK'S CERTIFICATE OF MAILING

STATE OF FLORIDA
COUNTY OF POLK

    I, RICHARD M. WEISS, Clerk of the Circuit Court in and for Polk County, Florida do hereby certify that on the _____2_____ day of OCTOBER, 2009, I sent by United States mail, postage prepaid one copy of the **CERTIFICATE OF TITLE**, in the above entitled cause to the following named defendants, to wit:

    **SEE ATTACHED**

    WITNESS my hand and official seal of the office this _____2_____ day of OCTOBER, 2009.

Richard M. Weiss
Clerk of the Circuit Court

By_____
Deputy Clerk

(COURT SEAL)

Exhibit I

SERVICE LIST

HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE, UNDER THE POOLING AND SERVICING
AGREEMENT DATED AS OF DECEMBER 1, 2006,
FREMONT HOME LOAN TRUST 2006-E

vs.

LISA GREEN, et al.

MICHELLE R. DONAHUE, ESQ. attorney for
LISA GREEN
545 Avenue K, SE
Winter Haven, FL 33880

MICHELLE R. DONAHUE, ESQ. attorney for
DAVID GREEN
545 Avenue K, SE
Winter Haven, FL 33880

KEVIN M. KOHL, ESQ. attorney for
WATER SUPPLY, INC.
Law Office of Kevin M. Kohl
PO Box 3855
LAKE WALES, FL 33859

Our File No.: A811190/DD

Ideal Houses
PO Box 288
Lakeland FL 33802

Exhibit I

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

FILED – CIVIL
POLK COUNTY CLERK
CIRCUIT COURT CIVIL

.2009 DEC 16 P 12: 04

HSBC BANK USA, NAT'L ASS'N,
AS TR., UNDER THE POOLING &
SERVICING AGREEMENT DATED AS OF
DEC. 1, 2006, FREEMONT HOME LOAN
TRUST 2006-E,

    Plaintiff,

v.

LISA GREEN, et al.,

    Defendants.

_____/

Case No.: 2008-CA-002864

Section: 04

## ORDER DENYING PLAINTIFF'S OBJECTION TO SALE AND MOTION TO SET ASIDE FORECLOSURE SALE

**THIS MATTER** having come before the Court on Plaintiff's, HSBC BANK USA, NAT'L ASS'N, AS TR., UNDER THE POOLING & SERVICING AGREEMENT DATED AS OF DEC. 1, 2006, FREEMONT HOME LOAN TRUST 2006-E, *Objection to Sale and Motion to Set Aside Foreclosure Sale* ("Objection"), dated September 21, 2009. The Court, having reviewed the Motion, pleadings, applicable case law, and having heard and considered the arguments of the Parties at a hearing on November 13, 2009, and otherwise being fully informed in the matter, finds as follows:

    1.    On October 31, 2006, Defendants executed a MORTGAGE ("Mortgage") and ADJUSTABLE RATE NOTE ("Note") encumbering the real property ("Property") at issue in this instant action. Subsequently, Plaintiff sought to foreclose on the Property. A *Summary Final Judgment of Foreclosure*, filed May 19, 2009, was entered. On September 17, 2009, an innocent third party, IDEAL HOUSES, LLC ("Third Party") was the highest bidder for the Property at the Foreclosure Sale, having bid slightly more than $27,000.00. Consequently, an *Amended Certificate of Sale*, filed September 18, 2009, and *Certificate of Title*, filed September 30, 2009, were entered.

    2.    A *Certificate of Service*, filed September 30, 2009, reflects that Plaintiff served upon Third Party its Objection, dated September 21, 2009. Pursuant to its Objection, Plaintiff, having provided bidding instructions to bid up to the amount of $270,000.00 (two hundred and seventy thousand dollars), argued that its Foreclosure Sales Bidding Agent/ Sale Attendant ("Agent"), due to the Agent's personal typographical error, believed he was permitted only to bid up to $27,000.00 (twenty-seven thousand dollars). At the November 13, 2009 hearing,

Exhibit J

Plaintiff argued that, based on the Agent's error, the Foreclosure Sale should be set aside on "inadequacy of price" grounds.

3.           Pursuant to its *Response to Motion to Set Aside Foreclosure Sale*, filed November 12, 2009, Third Party argued that, relying of the filing date of the *Certificate of Service* above, Plaintiff failed to file its Objection by September 28, 2009, within ten (10) days after the *Amended Certificate of Sale* was filed. See Fla. Stat. § 45.031(5) (2009) ("If no objections to the sale are filed within 10 days after filing the certificate of sale....").

4.           Plaintiff has provided no additional proof that its Objection was filed on or before September 28, 2009. After the Court conducted its own search of the instant action's Record and court records in general, the records of the Clerk of the Circuit Court for Polk County do not reflect that the Objection was ever received by the Court on or before September 28, 2009.

5.           The Court finds that Plaintiff failed to timely file its Objection or, at least, provide proof of the timely filing thereof by September 28, 2009 in accordance with Section 45.031(5).

6.           The controlling case from the Second District Court of Appeal makes it clear that a trial court must rule on the documents actually contained in the Record where the Clerk's records do not reflect a timely filing and no proof is provided of a timely filing. Oglesby v. Dep't of Revenue, 931 So. 2d 256 (Fla. 2d DCA 2006) ("The appellees assert that on November 12, 2003, they mailed their original motion to dismiss for failure to prosecute...directly to the presiding judge, rather than filing it with the clerk of court...The court clerk's records do not reflect that the motion was ever received. The appellees concede that the record does not contain this motion and recognize that it was probably misplaced. They have not been unable to produce proof of the filing of this motion. Thus, the appellees are relying on a document that is not in the record and cannot be produced by any clerk...[following an informal transfer to a different circuit court] [S]ome of the filings even bore incorrect case numbers. However, because the record does not actually contain the one document needed to permit dismissal, we reluctantly reverse.").

7.           While the Court believes, as recited above, that Oglesby is the controlling case law binding upon the Court, it is perhaps worth noting that this case can be factually distinguishable from a related Fourth District Court of Appeal case (which, even if not factually distinguishable, would nevertheless still not be controlling were it to differ with Oglesby from the Second District Court of Appeal). Opportunity Funding I, LLC v. Otetchestvennyi, 909 So. 2d 361 (Fla. 4th DCA 2005) (The clerk's office did not docket the mortgagee's objection and motion to vacate a foreclosure sale until after the ten (10) day period pursuant to Section 45.031(5). The mortgagee had sent the objection via UPS overnight mail

Exhibit J

within the ten (10) day period. However, the trial court denied the objection and motion based on the date it was docketed. The appeals court found "[t]he tracking report [the UPS tracking form provided by the mortgagee] established the delivery of the objection and motion within the time frame provided by the rules....to allow the mechanism of the date stamp [referring to Florida Rule of Civil Procedure 1.080(e)] to prevail over the evidence of a timely filed motion exalts form over substance.").

Finally, the Court would also distinguish the case at bar from those cases involving the timeliness of service under the Florida Rules of Civil Procedure. Poulsen v. Comfort Zone Air, Inc., 869 So. 2d 658 (Fla. 4th DCA 2004) ("Although appelle concedes that it was served timely, the original was not filed in the court file...*Florida Rule of Civil Procedure 1.530(b)* provides that motion for new trial and rehearing 'shall be served not later than 10 days...' It is only service of the motion, not filing with court, that must take place within ten days...Thus, by serving his motion..., Poulsen satisfied the time requirements."); Dep't of Revenue v. Loveday, 659 So. 2d 1239, 1241 (Fla. 2d DCA 1995). Unlike the Florida Rules of Civil Procedure at issue in *Poulsen* and *Loveday*, Section 45.031(5) clearly requires that an objection be filed within the ten (10) day time period.

Therefore, it is **ORDERED AND ADJUDGED** that:

1. Based on the Court's findings and case law cited above, Plaintiff's, HSBC BANK USA, NAT'L ASS'N, AS TR., UNDER THE POOLING & SERVICING AGREEMENT DATED AS OF DEC. 1, 2006, FREEMONT HOME LOAN TRUST 2006-E, *Objection to Sale and Motion to Set Aside Foreclosure Sale* is **DENIED.**

2. The Court reserves jurisdiction of the subject matter and of the Parties for such other purposes as may be necessary and proper.

**DONE AND ORDERED** in Bartow, Polk County, Florida, on this _____15___ day of ____Dec.____, 2009.

DICK PRINCE, Circuit Judge

Copies to: -Laura L. Walker, Esq., Roger D. Bear, Esq., Joshua E. Donnelly, Esq., & Jessica E. Conte, Esq., 1230 S. Myrtle Ave., Suite 105, Clearwater, FL 33757-3445
-R. James Platt, Esq., 4404 S. Florida Ave., Suite 10, PO Box 2536, Lakeland, FL 33806-2536
-Michelle R. Donahue, Esq., 545 Ave K, S.E., Winter Haven, FL 33880
-Kevin Kohl, Esq., PO Box 3855 Lake Wales, FL 33859

Exhibit J